**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:

**MEGAN MATTHEWS,**

 **Plaintiff,**

**V**

**CITY AND COUNTY OF DENVER, COLORADO,
CHIEF OF POLICE PAUL PAZEN, in his individual capacity,
JOHN & JANE DOES 1-5, in their individual capacities,**

 **Defendants.**

---

### COMPLAINT AND JURY DEMAND

---

 Plaintiff, Megan Matthews, by and through her attorney Ross Ziev, for claims against the Defendants, alleges as follows:

### <u>INTRODUCTION</u>

 On May 29, 2020, Megan Matthews was injured as a result of the systematic aggression by the Denver Police Department against non-violent protestors and bystanders.  This police aggression continued throughout the downtown Denver George Floyd protests without regard to the constitutional rights of protesters and bystanders including Ms. Matthews. The officers have used 'less lethal' weapons to assert and show their dominance over protesters and the citizens of this state. These actions have not been isolated events - rather, they are part of a force-wide use of excessive and unconstitutional force to restrict the constitutional rights of protesters challenging racism

and police brutality in our society. This pattern and practice of conduct by Denver police tramples on the Constitution.

## PARTIES

1.   At all times pertinent to the subject matter of this litigation, Plaintiff Megan Matthews ("Ms. Matthews"), was a citizen of the United States of American and a resident of and domiciled in the State of Colorado.

2.   Defendant City of Denver, Colorado ("Denver") is a municipality incorporated in the State of Colorado.

3.   At all times pertinent to the subject matter of this litigation, Defendant Paul Pazen was a citizen of the United States and resident of and domiciled in Colorado.  At all times pertinent, Defendant Pazen was acting under color of state law in his capacity as Chief of Police of Denver.  Defendant Pazen was responsible for supervising Defendants John & Jane Does 1-5 and directing their actions during the protests in response to the murder of George Floyd, and specifically, their actions during the protest on May 29, 2020.

4.   At all times pertinent to the subject matter of this litigation, Defendants John & Jane Does 1-5 were citizens of the United States and residents of and domiciled in Colorado. At all times pertinent, Defendants John & Jane Does 1-5 were acting within the scope of their official duties and employment and under color of state law in their capacities as law enforcement officers employed by the Denver Police Department ("DPD").

## JURISDICTION AND VENUE

5.   This action arises under the Constitution and laws of the United States, and is brought pursuant to Title 42 U.S.C. §1983.  Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331.  Jurisdiction supporting Plaintiff's claim for attorney fees and costs

is conferred by 42 U.S.C. § 1988.

6.  Venue is proper in this District according to U.S.C. § 1391(b) because the events giving rise to the claims in this District and all Defendants reside in this District.

## FACTUAL ALLEGATIONS

### George Floyd's Murder and the Ensuring Uprising Against Racist Policing

7.  George Floyd was murdered on May 25, 2020.

8.  On March 25, 2020, Minneapolis police officers arrested Mr. Floyd, a 46-year-old black man accused of buying cigarettes with a counterfeit $20 bill. Those officers pinned Mr. Floyd to the ground. Then one officer, Derek Chauvin, put his knee on Mr. Floyd's neck, choking him for eight minutes and forty-six seconds while Mr. Floyd repeatedly told him that he couldn't breathe.  Mr. Floyd died as a result of these police actions on the street in plain view.

9.  Mr. Floyd's death was proof of the lack of accountability and the 'good ole boys' club' operating within police departments in the United States. Without change or accountability, officers know that they can violate the law, and constitution, with impunity, and particularly when the victim of their abuse is a person of color. Fellow officers did nothing more than stand by and watch.

10. Mr. Floyd's murder caused millions of people to gather across this nation to bring attention to the ongoing abuses in American policing towards people of color.

11. Denver was no exception to the nationwide protests, and people started to gather downtown for this purpose on May 28, 2020.

## **PLAINTIFF'S ALLEGATIONS**

16.  Ms. Matthews attended protest rallies on Thursday, May 28, 2020 and Friday, May 29, 2020.

17. On Friday, May 29, 2020, Ms. Matthews was at the protest with friends to supply first aid and assistance to fellow protesters.

18. Ms. Matthews was handing out granola bars and water to fellow protestors.

19. Ms. Matthews, along with her friends, were across the street from the state capitol building near a crowd that was non-violently protesting.

20. Ms. Matthews was looking for people that needed assistance.

21. Ms. Matthews noticed that there was an empty parking lot across the street from where she was that was filled with a squad of heavily dressed police officers.

22. As Ms. Matthews was standing on the sidewalk, police began to fire rubber bullets and tear gas at her and the crowd around her.

23. Ms. Matthews saw a projectile coming towards her and did not have time to react before it impacted her face.

24. Ms. Matthews hit the ground and was picked up by people around her, trying to move and treat her.



*Ms. Matthews given assistance after being shot in the eye with rubber bullet.*

25. Ms. Matthews was transported by ambulance and dropped off at the hospital where she was diagnosed with a fractured orbital, fractured nose, possible tear in her retina, concussion and a one-inch-deep cut on her forehead that went down to the corner of her eye and required stitches.



*Ms. Matthews at the hospital.*

26. Ms. Matthews has had extensive medical treatment for her injuries including surgery on her nose and surgery on her eye with further surgeries scheduled. Eight months after the injury, Ms. Matthews still experiences flashes of light and her eye is still leaking tears.

27. On June 9, 2020, Ms. Matthews filed an individual complaint with the Office of the Independent Monitor ("OIM").

28. Ms. Matthews OIM complaint was investigated by Sergeant James Dixon. Sergeant Dixon failed to conduct an unbiased investigation, alleging that Ms. Matthews

was "probably hit by a rock" and calling the peaceful demonstration "a violent riot." Sergeant Dixon did not tell Ms. Matthews who filed the projectile at her and seemed to not believe that she was actually hit with a kinetic impact projectile ("KIP").

29. After a unanimous request from the Denver City Council, OIM launched an overall investigation into the Denver Police Department's response to the George Floyd Protests.

30. In its report, OIM cited research showing that police tend to respond to demonstrations about police brutality more aggressively than they do to protests with other messages, making arrests and using force and greater rates.[1]

31. OIM found that DPD did not sufficiently implement tight internal controls on the use of force during protests that are about police conduct.

32. During its investigation, OIM found that DPD did not create sufficient officer rosters for the demonstrations prior to June 1, 2020 and did not provide fully documented Use of Force statements.

33. DPD's Use of Force policy only allowed for the use of 40mm launchers for kinetic impact rounds in response to active aggression which is defined as an overt act or threat of an assault, coupled with the present ability to carry out the action, which reasonably indicates that an assault or injury to a person is likely.

34. The OIM investigation also revealed that DPD did not consistently comply with its policy requiring the issue of dispersal orders before using force to disperse crowds.

35. The OIM investigation also revealed that several officers deployed 40mm launchers with kinetic impact projectiles without the proper training and certification required by DPD policies.

---

[1] Heidi Reynolds-Stenson, *Protesting the Police: Anti-Police Brutality Claims as a Predicator of Police Repression of Protest,* Social Movement Studies (2018).

### FIRST CLAIM FOR RELIEF
**42 U.S.C. § 1983**
**First Amendment Violation – Freedom of Speech and Assembly**
**(Plaintiff against Defendants)**

36. Plaintiff incorporates herein all allegations set forth above.

37. Defendants, acted under color of state law, and within the course and scope of their employment, in their capacities as officers of the Denver Police Department at all times relevant to the allegations in this Complaint.

38. Defendants are "persons" under 42 U.S.C. § 1983.

39. Plaintiff was engaged in First Amendment-protected expression by gathering to protest police brutality.

40. The actions of Defendants – specifically, the use of excessive force against peaceful protesters – would chill a reasonable person from engaging in activity protected by the First Amendment.

41. Plaintiff's expression was a matter of public concern and did not violate any law.

42. Plaintiff's expression occurred in a traditional public forum.

43. Defendants' actions were a content-based and/or viewpoint-based restriction of Plaintiff's expression.

44. Defendants' actions were not a reasonable time, place and manner restriction on speech.

45. Defendants, collectively, failed to intervene to prevent each Defendant from violating Plaintiff's constitutional rights.

46. At the time when Defendants stopped Plaintiff from speaking and gathering, Plaintiff had a clearly established constitutional right under the First Amendment to the

United States Constitution to gather, express herself, and speak freely. Any reasonable law enforcement officer knew or should have known of this clearly established right.

47. Defendants engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

48. Defendants stopped Plaintiff from engaging in expressive activity in accordance with the customs, policies, and practices of Defendant Denver.

49. Defendant Denver has a custom, practice or policy of tolerating violations of the First Amendment of the United States Constitution as shown by its behavior during the 2008 Democratic National Convention demonstrations and other events.

50. The actions of the Defendants were authorized (before and during the fact), and ratified (after the fact), by final policymakers for Defendant Denver, including Chief Pazen.

51. Defendant Denver's customs, policies, and/or practices, and the decisions of its final policymakers, were the moving force behind Defendants' violation of Plaintiff's constitutional rights.

52. Defendant Denver and Chief Pazen failed to properly supervise and/or train its officers.

53. As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

54. Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the protest, and other compensatory and special damages.

55. Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**First Amendment Violation – Retaliation**
**(Plaintiff against Defendants)**

56. Plaintiff incorporates herein all allegations set forth above.

57. Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers for the DPD at all times relevant to the allegations in this Complaint.

58. Defendants are "persons" under 42 U.S.C. § 1983.

59. Plaintiff was engaged in First Amendment-protected expression by gathering to protest police brutality.

60. The actions of Defendants – specifically, the use of excessive force against peaceful protesters – would chill a reasonable person from engaging in activity protected by the First Amendment.

61. Plaintiff's expression was on a matter of public concern and did not violate any law.

62. Plaintiff's expression occurred in a traditional public forum.

63. Defendants jointly and on their own accord responded to Plaintiff's First Amendment protected activity with retaliation, including but not limited to use of physical force, including Kinetic Impact Projectile ("KIPs") and chemical agents.

64. By unlawfully using force against Plaintiff, Defendants sought to punish Plaintiff for exercising her First Amendment rights, to silence her, and to deter her from gathering and

speaking in the future. Defendants' retaliatory actions would chill a person of ordinary firmness from engaging in such First Amendment protected activity.

65. Defendants' retaliatory actions were substantially motivated by Plaintiff's exercise of her First Amendment rights.

66. At the time when Defendants retaliated against Plaintiff for exercising her First Amendment rights, Plaintiff had a clearly established constitutional right under the First Amendment to the United States Constitution to be free from retaliation. Any reasonable law enforcement officer knew or should have known of this clearly established right.

67. Defendants, collectively, failed to intervene to prevent each Defendant from violating Plaintiff's constitutional rights.

68. Defendants engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

69. Defendants stopped Plaintiff from engaging in expressive activity in accordance with the customs, policies, and practices of Defendant Denver.

70. Defendant Denver has a custom, practice or policy of tolerating its officers' retaliatory violations of the First Amendment of the United States Constitution as shown by its behavior during the 2008 Democratic National Convention demonstrations and other events.

71. Defendant Denver and Chief Pazen failed to properly supervise and/or train its officers.

72. The actions of Defendants were authorized (before and during the fact), and ratified (after the fact), by final policymakers for Defendant Denver, including Chief Pazen.

73. Defendant Denver's customs, policies, and/or practices, and the decisions of its final policymakers, were the moving force behind Defendants' violation of Plaintiff's constitutional rights.

74. As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

75. Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the protest, and other compensatory and special damages.

76. Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Fourth Amendment Violation – Excessive Force**
**(Plaintiff against Defendants)**

77. Plaintiff incorporates herein all allegations set forth above.

78. Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers for the DPD at all times relevant to the allegations in this Complaint.

79. Defendants are "persons" under 42 U.S.C. § 1983.

80. Plaintiff had a protected Fourth Amendment interest against being victimized by the use of excessive force at the hands of law enforcement personnel.

81. Defendants did not have, at any time, a legally valid basis to apply force to Plaintiff.

82. Defendants unlawfully seized Plaintiff by means of excessive physical force, including the use of chemical agents and KIPs.

83. Defendants had no warrant authorizing any seizure of Plaintiff.

84. Each Defendant failed to intervene to prevent the other Defendants from violating Plaintiff's constitutional rights and is thereby liable for such failure to intervene.

85. Defendants' actions were objectively unreasonable in light of the circumstances confronting them.

86. Plaintiff had committed no crime (nor could any of the Defendants have reasonably believed she had committed any crime) that would legally justify arrest or detention, Plaintiff gave the officers no reason to fear for their safety, Plaintiff was obviously unarmed, and Plaintiff was not resisting arrest, attacking or fleeing.

87. Defendants did not have a legally valid basis to apply the force against Plaintiff in the manner and with the level of force used under the circumstances presented.

88. Defendants recklessly created the situation in which they used force.

89. Defendants' actions, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them.

90. At the time when Defendants used excessive force against Plaintiff, Plaintiff had a clearly established constitutional right under the Fourth Amendment to the United States Constitution to be secure from unreasonable seizure through excessive force. Any reasonable law enforcement officer knew or should have known of this clearly established right.

91. Defendants engaged in these actions intentionally, willfully, and wantonly, demonstrating deliberate indifference to, and a reckless disregard for, Plaintiff's constitutionally protected rights.

92. Defendant Denver has a custom, practice or policy of tolerating violations of the Fourth Amendment of the United States Constitution as shown by its behavior during the 2008 Democratic National Convention demonstrations and other events.

93. The actions of the Defendants were authorized (before and during the fact), and ratified (after the fact), by final policymakers for Defendant Denver, including Chief Pazen.

94. Defendant Denver's customs, policies, and/or practices, and the decisions of its final policymakers, were the moving force behind Defendants' violation of Plaintiff's constitutional rights.

95. Defendant Denver and Chief Pazen failed to properly supervise and/or train its officers.

96. As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described herein, Plaintiff suffered injuries, damages, and losses.

97. Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the vigil, and other compensatory and special damages.

98. Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

**FOURTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Fourteenth Amendment Violation – Excessive Force**
**(Plaintiff against Defendants)**

99. Plaintiff incorporates herein all allegations set forth above.

100.     Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers for the DPD at all times relevant to the allegations in this Complaint.

101.      Defendants are "persons" under 42 U.S.C. § 1983.

102.     Plaintiff had a protected Fourteenth Amendment Substantive Due Process interest against being unreasonably harmed by the use of excessive force at the hands of law enforcement personnel.

103.     Defendants did not have, at any time, a legally valid basis to use force against Plaintiff.

104.     Defendants' use of force was extremely disproportionate.

105.     Defendants acted with malice and/or excessive zeal amounting to an abuse of power.

106.     Defendants acted for the purpose of causing harm unrelated and unnecessary to any relevant policing objective.

107.     Defendants' actions were arbitrary and/or conscience shocking in light of the circumstances confronting them.

108.     Defendants failed to intervene to prevent each Defendant from violating Plaintiff's constitutional rights.

109.     Defendants engaged in these actions intentionally, willfully, and wantonly, demonstrating deliberate indifference to, and a reckless disregard for, Plaintiff's constitutionally protected rights.

110.     At the time when Defendants used excessive force against Plaintiff, Plaintiff had a clearly established constitutional right under the Fourteenth Amendment to the United States Constitution to be secure from excessive force. Any reasonable law enforcement officer knew or should have known of this clearly established right.

111.     The actions of the Defendants were authorized (before and during the fact), and ratified (after the fact), by final policymakers for Defendant Denver, including Chief Pazen.

112.     Defendant Denver's customs, policies, and/or practices, and the decisions of its final policymakers, were the moving force behind Defendants' violation of Plaintiff's constitutional rights.

113.     Defendant Denver and Chief Pazen failed to properly supervise and/or train its officers.

114.     As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

115.     Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the vigil, and other compensatory and special damages.

116.    Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

**FIFTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Fourteenth Amendment Violation – Procedural Due Process**
**(Plaintiff against Defendants)**

117.    Plaintiff incorporates herein all allegations set forth above.

118.    Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers for the DPD at all times relevant to the allegations in this Complaint.

119.    Defendants are "persons" under 42 U.S.C. § 1983.

120.    The due process rights of Plaintiff were violated when Defendants failed to provide any warning about the deployment of KIPs, to provide an opportunity to disperse, to leave open routes of egress, and to enforce the laws of the City of Denver and State of Colorado in a way that a person of ordinary intelligence could understand and comply with them.

121.    Defendant's use of force during the protests was inflicted based on the unbridled discretion of individual police officers, and was in no way guided by any published law or legal authority that would provide a person of ordinary intelligence with a reasonable opportunity to understand what conduct is permitted and prohibited, or what conduct would result in the use of force.

122.    Denver's customs, policies, and practices relating to the use of force during the protests permitted use of force at the unbridled discretion of an individual police officer, without adequate notice or an adequate opportunity to comply, in a way that does

not provide a person of ordinary intelligence with a reasonable opportunity to understand what conduct is permitted and prohibited, and in a way that authorizes and encourages discrimination based on the content of the message of a person engaged in expressive activity.

123.     Plaintiff reasonably fears further violation of the right to due process in the future if she participates in protest activity.

124.     At the time when Defendants violated Plaintiff's due process rights, Plaintiff had a clearly established constitutional right under the Fourteenth Amendment to the United States Constitution to be afforded due process of law. Any reasonable law enforcement officer knew or should have known of this clearly established right.

125.     Defendants engaged in these actions intentionally, willfully, and wantonly, demonstrating deliberate indifference to, and a reckless disregard for, Plaintiff's constitutionally protected rights.

126.     The actions of the Defendants were authorized (before and during the fact), and ratified after the fact), by final policymakers for Defendant Denver, including Chief Pazen.

127.     Defendant Denver's customs, policies, and/or practices, and the decisions of its final policymakers, were the moving force behind Defendants' violation of Plaintiff's constitutional rights.

128.     Defendant Denver and Chief Pazen failed to properly supervise and/or train its officers.

129.     Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

130.     Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the vigil, and other compensatory and special damages.

131.     Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in her favor and against each Defendant, and award her all relief allowed by law, including but not limited to the following:

A.  All appropriate relief at law and equity;

B.  Injunctive relief, including:

 a. Enjoining Defendants from shooting projectiles indiscriminately into crowds of those exercising their rights of free speech and assembly;

 b. Enjoining Defendants from shooting projectiles at protesters unless there is an immediate threat of bodily injury to the protester, officers or others;

c.  Enjoining Defendants from using force without warning against protesters;

d.  Requiring all Defendant law enforcement officers deployed to police demonstrations must have their body-worn cameras recording at all times, and forbidding officers from intentionally obstructing the camera or recording;

e.  Requiring that all Defendant law enforcement officers deployed to police demonstrations must create a use of force report documenting every single deployment of KIPs, tear gas, or any other less-than-lethal weapon;

f.  Requiring that any and all orders to disperse must be followed by adequate time for the intended audience to comply, and officers must leave room for safe egress; if it appears the intended audience did not hear the order, the order must be repeated multiple times before the crowd is dispersed.

C.  Declaratory relief and other appropriate equitable relief;

D.  Economic losses on all claims as allowed by law;

E.  Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, physical impairment, past and future medical bills and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

F.  Punitive damages on all claims allowed by law and in an amount to be determined at trial;

G.  Attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

H.  Pre-and post-judgment interest at the lawful rate; and

I.  Any other appropriate relief at law and equity that this Court deems just and proper.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 5th day of March, 2021.

THE LAW OFFICES OF ROSS ZIEV, P.C.


By:     */s/ Ross Ziev*
_____
Ross Ziev, #43181
6795 East Tennessee Avenue, Ste. 210
Denver, CO  80224
Phone:  (303) 351-2567
Fax:  (720) 669-6992
ross@helpincolorado.com

Attorney for Plaintiff